IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BERNICE MCREYNOLDS, as Mother and next friend of D.M., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CASE NO. 2:04-cv-850-MEF |
| ALABAMA DEPARTMENT OF YOUTH SERVICES, *et al.*, ) ) ) ) | (WO) |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bernice McReynolds brings this claim on behalf of her minor son, DM. Plaintiff's sole remaining claim is pursuant to 42 U.S.C. § 1983 for violation of DM's Eighth Amendment right to be free from cruel and unusual punishment while being detained by the Alabama Department of Youth Services ("DYS"). Currently before this Court are Defendants Howard, Daniel, and Moore's Motions for Summary Judgment (Docs. ## 77, 79), filed March 10, 2008. After reviewing the submissions of the parties in connection with the motions, this Court finds that the motions are due to be DENIED.

**I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(4) (civil rights). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on

which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motions. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Plaintiff's minor son, DM, was placed in the custody of DYS by the Juvenile Court of Dallas County, Alabama on June 30, 2003; DM was 15 years old at the time. DYS placed DM in the Mt. Meigs Juvenile Detention Complex ("Meigs"). DM has had a history of mental and emotional problems, including suicide attempts. Prior to April 8, 2004, DM had problems with a particular guard at Meigs, Emerson Moore ("Moore"). DM had filled out several complaint forms reporting to Moore's superiors that Moore was denying DM certain rights including not being allowed recreation time that the other juveniles received.

On April 8, 2004, Moore was on duty while DM was in his cell. DM felt that Moore was again improperly denying him recreation time and he asked Moore from his cell for a complaint form so that he could file another complaint against Moore. Moore told DM that he wouldn't provide him a form because they didn't have any left; however, DM continued to demand a complaint form. Moore called three additional guards over to DM's cell, Defendants James Daniel ("Daniel"), Robert Howard ("Howard"), and Billie Ray Cox ("Cox"). When they arrived, the guards unlocked DM's cell and instructed DM to bring all of his belongings out of the cell. DM obeyed the order and brought his mattress and other belongings out of his cell. The guards then ordered DM to remove his clothes, which DM refused to do. DM told the guards that he just wanted a complaint form and hadn't done anything wrong. The guards repeated the order to remove his clothes, and DM continued to ask why that was necessary.

One of the guards, Daniel, struck DM in the back of his leg with his nightstick. DM

4

turned to grab the nightstick as he fell to the floor. Three of the guards, Daniel, Howard, and Cox, began to repeatedly strike DM with their nightsticks all over his body, including his head and shoulders. Moore was watching the guards' assault on DM and did not attempt to intervene. DM suffered at least three blows to the head from a nightstick; the third blow caused blood to gush from his head. A short time after DM began bleeding, the guards stopped the beating and put DM back in his cell. Initially, the guards refused to take DM to the hospital, but after 15 to 20 minutes passed, they returned with shackles and took DM to the hospital.

The guards gave DM a towel to wrap around his head to help stop the bleeding. By the time DM arrived at the hospital, it was soaked in blood. The doctor that examined DM said that he could have bled to death if he had not received medical treatment. DM was in a great amount of pain from the wounds he received. The doctor prescribed DM pain medication, but he was not allowed to take the medication. DM's head wound required eleven stitches.

Plaintiff filed this claim on September 10, 2004. This Court granted Defendants' Motion to Dismiss on March 28, 2006. Plaintiff appealed that ruling to the Eleventh Circuit. On November 29, 2006, the Circuit reversed this Court on Plaintiff's Eighth Amendment claim and remanded that claim back.

## IV. DISCUSSION

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as

long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1(1992); *Skrtich*, 280 F.3d at 1300. Based upon these factors, a court is to draw inferences as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm to be tantamount to a knowing willingness that it occur. *Whitley*, 475 U.S. at 321; *Skrtich*, 280 F.3d at 1300-01. Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance. *Skrtich*, 280 F.3d at 1301.

The defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution. *Id.* The only question for this Court is whether Plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Id.*

Defendants argue they are entitled to summary judgment because, as prison guards,

6

they are entitled to deference when responding to a prison disturbance. Defendants cite *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990), which opinion reversed a district court's denial of summary judgment based upon the "wide range of deference [given] to prison officials acting to preserve discipline and scurity." However, in *Bennett*, there was no evidence, other than the prisoner's own conclusory allegations, that he had actually been injured by the defendants. Bennett never sought medical treatment for any injuries, despite daily opportunities to do so, and no witness could corroborate that he had been struck. *See id.* Accordingly, Defendants' reliance on *Bennett* in this case is misplaced, because Plaintiff is not basing her claims on conclusory allegations of injury. Indeed, DM's injuries were so serious that Defendants recognized he needed immediate medical attention.

This Court finds that the facts of this case are more analogous to the facts in *Skrtich*, where the Eleventh Circuit affirmed a district court's denial of motions for summary judgment on Eighth Amendment claims. In *Skrtich*, several prison guards were called to Skrtich's cell to perform a "cell extraction" because he had refused to vacate his cell so it could be searched. Skrtich had a history of disciplinary problems. The guards entered Skrtich's cell and used an electronic shield to shock Skrtich, knocking him to the floor. Skrtich alleged that the electric shock caused him to fall to the floor, after which he offered no physical resistance. Nevertheless, the guards repeatedly punched and kicked Skrtich, and slammed his head into the wall. Skrtich suffered severe injuries from the beating, including rib fractures, back injuries, scalp lacerations, and abdominal injuries, which required

hospitalization. *Skrtich*, 280 F.3d at 1299-1300.

In this case, DM was making noise in his cell because Moore refused to give him a complaint form. Moore summoned Daniel, Howard, and Cox to DM's cell and ordered him to remove his belongings from the cell. DM complied with Moore's orders until Moore told him to remove his clothing. When DM refused to remove his clothing, Daniel, Howard, and Cox beat DM with their nightsticks all over his body, including his head and shoulders, while Moore watched. DM was struck directly on the head three times, suffering a wound that required eleven stitches and was so serious that his doctor told DM that he could have bled to death.

This Court finds that under these circumstances, when viewed in the light most favorable to the non-movant, Plaintiff, there is sufficient evidence for a reasonable trier of fact to conclude that Defendants did not use force in a good faith effort to maintain or restore discipline, but rather used force maliciously and sadistically to cause harm. *See id.* at 1302.

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

(1) Defendants Daniel and Moore's Motion for Summary Judgment (Doc. # 77) is DENIED.

(2) Defendant Howard's Motion for Summary Judgment (Doc. # 79) is DENIED.

DONE this the 29th day of April, 2008.

                                      /s/ Mark E. Fuller
                                CHIEF UNITED STATES DISTRICT JUDGE